UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAL PUJOL,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT A. MCDONALD,<br><br>    Defendant. | Case No. 16-cv-04936-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND**<br><br>Re: Dkt. No. 15 |

Now before the Court is defendant Robert A. McDonald, Secretary of Veterans Affairs' motion to dismiss plaintiff Amal Pujol's first, second, fourth, fifth, and sixth causes of action. Docket No. 15. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and hereby VACATES the hearing set for March 24, 2017. For the reasons set forth below, the Court GRANTS defendant's motion, with partial leave to amend. If plaintiff wishes to amend her complaint in accordance with this order, plaintiff must file an amended complaint no later than April 7, 2017.

**BACKGROUND**

On February 20, 2015, plaintiff Amal Pujol resigned from the United States Department of Veterans Affairs ("defendant" or "the VA") because of an allegedly intolerable working environment. On May 31, 2016, having completing the Equal Employment Opportunity Commission ("EEOC") administrative process, Pujol received a right to sue. Compl. (Dkt. 1) ¶¶ 47-52. On August 26, 2016, Pujol filed a complaint against the VA, alleging sex discrimination, sexual harassment, disability harassment, retaliation, and constructive discharge. The VA moves to dismiss five of Pujol's six claims, contending each is either time barred or

insufficiently pled.

## I. Factual Background

Amal Pujol began working at the VA's Martinez facility in June 2014 and by August 2014 she began noticing that her immediate supervisor Dickey Alfred regularly used the word "bitch." Compl. ¶¶ 9-16. Alfred referred to female employees as "bitches," remarking how "bitches" were "always complaining." *Id*. ¶ 15. Pujol asked Alfred to stop using inappropriate language, telling him it made her uncomfortable. Decl. Press, Ex. B (Dkt. 16-2), Employment Discrimination Complaint, at 9.[1] Explaining that he was just "joking," Alfred dismissed Pujol's concerns and the conduct continued. *Id*.

In November 2014, at a Veterans Day event, Alfred commented about a woman's rear end and about her underwear. Compl. ¶¶ 17. Pujol told Alfred his comment was offensive and walked away. *Id*. Pujol also approached Alfred about her co-worker Robert Kelly, asking Alfred to tell Kelly to stop coming by her office. *Id*. ¶ 19. During the workday, Pujol alleges that Kelly would approach her, call her pretty, and tell her that he liked the smell of her perfume. *Id*. ¶ 18. Kelly told Pujol that if he were not married, she would be his girlfriend. *Id*. In mid-November 2014, the comments crossed the line into contact. *Id*. ¶ 24. As Pujol tied her shoe, Kelly bumped into her from behind, telling her he liked her rear end. *Id*. Alfred learned about the incident, but declined to investigate. *Id*. ¶ 16. He also declined to tell Kelly to stop approaching Pujol, despite witnessing Kelly's unwanted advances firsthand. *Id*. ¶ 19.

After Pujol complained about Alfred's conduct, she alleges that Alfred treated her worse than male employees. *Id*. ¶ 20. Pujol's co-workers Jonathan Maltez and Carlton Emmons were allowed schedule changes, whereas Alfred refused to grant Pujol a schedule change. *Id*. Alfred also reduced Pujol's authority and assigned her menial tasks, preventing her from overseeing employees and requiring that she clean the restrooms. *Id*. ¶ 21. Plaintiff's male co-workers were not treated in this manner. *See id.* During September 2014 employee evaluations, Alfred gave all

---

[1] Unless otherwise noted, pinpoint citations are to ECF-generated page numbers.

male employees who had worked the same time period as Pujol "outstanding reviews." *Id.* ¶ 23. Pujol received a review of "fully satisfactory." *Id.*

On November 25, 2014, Pujol met with Alfred to discuss scheduling. *Id.* ¶ 27. Pujol wanted to take a few days off once her sister went into labor. Decl. Elmore, Ex. 1 (Dkt. 20-2) at 3. Alfred closed his office door and began yelling at Pujol. Compl. ¶ 27. He told her that she took too much time off and that she brought her personal issues to work. *Id.* ¶ 28. Alfred told her that she had already taken too much time off to care for her daughter, that she needed to manage her schedule with her husband, and that he would not grant her additional leave to care for her daughter. *Id.* Pujol told Alfred that she felt he was harassing her. *Id.* Alfred told Pujol to quit if she felt that way. *Id.*

On December 24, 2014, Pujol was working with Marcos Troche when Alfred came down the hall. *Id.* ¶ 31. Unaware of Pujol, Alfred asked Troche, "[w]here is your [expletive] boss?" *Id.* Troche asked, "Who are you talking about?" *Id.* Alfred said, "Amal. She wants to go [expletive] cry about being the boss. Where is she at?" *Id.* Troche pointed out that Pujol was standing nearby. *Id.*

After this incident, Pujol contacted her secondary supervisor Roberto Welsh to express concerns that Alfred's conduct was creating a hostile work environment. *Id.* ¶ 32. Welsh told Pujol she was being "very emotional" and should "calm down." *Id.* Subsequently, Welsh and Pujol met with Human Resources to discuss Pujol's concerns. *Id.* ¶ 33. The meeting produced a solution: Pujol would receive a new office and would begin reporting directly to Welsh. *Id.* Pujol agreed to the plan and went on "stress leave" while the changes were made. *Id.* ¶ 34.

During her leave, Pujol had to submit time sheets in the office. *Id.* ¶ 35. When she submitted her January time sheet, Pujol learned that her new office was three doors from Alfred's. *Id.* ¶ 36. Pujol also discovered that the only furniture in her new office was a barstool. *Id.* ¶ 37. On February 9, 2015, Pujol's co-worker Jonathan Maltez told Pujol that her office remained unfurnished. *Id.* ¶ 38. He also told her that Alfred had a key to her new office. *Id.* On February 16, 2015, Pujol contacted Welsh about her concern that she would be returning to a hostile workplace. *Id.* ¶ 39. Welsh told Pujol her claims had been addressed. *Id.* On February 20, 2015,

1  Pujol learned that her office still had no furniture and contacted Welsh. *Id*. ¶ 40. Welsh repeated
2  that Pujol's concerns had been addressed. *Id*. Feeling that she had run out of options, she
3  resigned that day. *Id*. ¶ 41.

### II. Procedural Background

On February 20, 2015, Pujol resigned from the VA. Compl. ¶ 41. On April 3, 2015, Pujol contacted the VA Office of Resolution Management ("ORM") for counseling. Decl. Press, Ex. A (Dkt. 16-1) at 2. She met in person with a VA counselor on April 6, 2015 to discuss her harassment claims. *Id*. She received a right to file an administrative complaint on May 6, 2015 and she filed a complaint on May 21, 2015. Compl. ¶¶ 48-49. On May 31, 2016, Plaintiff received the VA Agency Decision. *Id.* ¶ 52. The decision granted plaintiff permission to file a civil lawsuit. On August 26, 2016, plaintiff filed this suit against the VA.

### III. Judicial Notice

Defendant asks that the Court take judicial notice of an EEOC Counselor Report and a Complaint of Employment Discrimination that were produced during plaintiff's proceedings with the ORM. *See* Mot. (Dkt. 15) at 8 & n.2. A court may take judicial notice of matters of public record, including administrative records. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Furthermore, for purposes of a motion to dismiss, a court may consider a document if "the complaint necessarily relies upon [the] document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Here, plaintiff's complaint necessarily relies on the EEOC Counselor report to assert that plaintiff timely exhausted her administrative remedies. Plaintiff's complaint also expressly references the administrative complaint she filed with the Department of Veterans Affairs Regional EEO Office. Compl. ¶ 49. Plaintiff does not oppose judicial notice of either record. Thus, the Court will take judicial notice of these records for purposes of this motion to dismiss.

4

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires a plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). Nonetheless, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.     Timeliness**

A federal employee must exhaust her administrative remedies before suing for violation of Title VII or the Rehabilitation Act. *Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985). "Before a federal civil servant can sue his employer for violating Title VII, he must, among other things, 'initiate contact' with an Equal Employment Opportunity counselor 'within 45 days of the date of the matter alleged to be discriminatory.'" *Green*, 136 S. Ct. at 1774 (citing 29 C.F.R. § 1614.105(a)(1)). "A claim is time

barred if it is not filed within these time limits." *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002).

Defendant argues that plaintiff's first, second, fourth, and fifth causes of action are time barred. Specifically, defendant argues that each of these causes of action is predicated on conduct that occurred between August 2014 and December 2014 and plaintiff did not initiate contact with an EEOC Counselor until April 3, 2015. Defendant asserts that because plaintiff had to contact an EEOC Counselor within 45 days of each act of discriminatory conduct, plaintiff can only base her claims on conduct that occurred between February 17, 2015 and April 3, 2015. Defendant asserts that because plaintiff's first, second, fourth, and fifth causes of action depend on conduct that occurred before February 17, 2015, those causes of action are time barred. Plaintiff contends that the Court should apply the doctrine of equitable tolling for purposes of her first cause of action and that the doctrine of continuing violation renders her second, fourth, and fifth causes of action timely. The Court agrees with defendant and finds that plaintiff's first, second, fourth, and fifth causes of action, as pled, are time barred. For the reasons set forth below, the Court GRANTS defendant's motion to dismiss these claims.

### A. First Cause of Action

Plaintiff's first cause of action alleges four instances of sex discrimination in violation of Title VII. Compl. ¶ 56. Specifically, defendant allegedly discriminated against plaintiff based on her sex by changing her schedule, reducing her management responsibilities, assigning her menial tasks, and giving her an undeservedly low performance evaluation. *Id*.

For purposes of contacting an EEOC counselor, each act of sex discrimination creates a separate actionable claim. *Morgan*, 536 U.S. at 113-15. Accordingly, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113. Unless waiver, estoppel, or equitable tolling applies, failing to contact an EEOC counselor within 45 days of each act renders a claim based on that act time barred. *See id*. at 113-14; *see also Lyons*, 307 F.3d at 1105.

Here, each allegedly discriminatory act occurred in September 2014. In September 2014, Alfred reduced plaintiff's supervisory authority, gave her a "fully satisfactory" rather than

6

1 "outstanding" review, denied her scheduling request, and assigned her menial tasks. Decl.
2 Elmore, Ex. 1 (Dkt. 20-2) at 2. Accordingly, each act occurred more than 45 days before
3 plaintiff's initial EEOC contact on April 3, 2015.

4 Plaintiff argues that her failure to contact the EEOC within 45 days of the allegedly
5 discriminatory conduct should be excused under the doctrine of equitable tolling because plaintiff
6 repeatedly approached her supervisors about the conduct. Opp'n (Dkt. 20) at 10-11. "Equitable
7 tolling may not be invoked by a [ ] plaintiff who, within the limitations period, has sufficient
8 information to know of the possible existence of a claim." *Santa Maria v. Pac. Bell*, 202 F.3d
9 1170, 1179 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. I.N.S.*, 272 F.3d
10 1176, 1194-96 (9th Cir. 2001) (en banc). Equitable tolling may be applied "to excuse a claimant's
11 failure to comply with the time limitations where she had neither actual nor constructive notice of
12 the filing period." *Leorna v. United States Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997).
13 However, the doctrine should be applied "only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498
14 U.S. 89, 96 (1990); *see also Morgan*, 536 U.S. at 113 ("Courts may evaluate whether it would be
15 proper to apply such doctrines, although they are to be applied sparingly.").

16 Here, plaintiff's complaint does not allege that plaintiff lacked notice of the filing period.
17 *Cf. Huynh v. U.S. Postal Serv.*, No. 11-3195, 2013 WL 2048681, at *2 (N.D. Cal. May 14, 2013)
18 ("This Court [previously] denied defendants' motion to dismiss and found that 'Huynh's
19 allegation that he was unaware of the 45-day statute of limitations is sufficient to survive
20 defendants' motion under 12(b)(6).'"); *see also* 29 C.F.R. § 1614.105(a)(2) (stating that the EEOC
21 "shall extend the 45-day time limit . . . when the individual shows that he or she was not notified
22 of the time limits and was not otherwise aware of them."). Indeed, the ORM's Notice of Partial
23 Acceptance states, "EEO training records show [plaintiff] received training on the 45 day time
24 limit via the NO FEAR training prior to the dates of these events." Decl. Elmore, Ex. 1 (Dkt. 20-
25 2) at 3. Moreover, plaintiff's discussions with her supervisors do not satisfy the counseling
26 requirement. *Johnson v. Henderson*, 314 F.3d 409, 415 (9th Cir. 2002) ("[T]here is no basis in
27 law to suggest that an employee's complaints to her supervisors satisfy the requirement that the
28 aggrieved employee seek EEO counseling prior to filing a formal complaint or suing in court.");

7

*see also Linkenhoker v. Rupf*, No. 06-5432, 2007 WL 404783, at *6 (N.D. Cal. Feb. 2, 2007) ("Although Plaintiff complained to her superiors, even pursuing grievance or arbitration procedures does not toll the statutory period for filing a Title VII claim with the EEOC."). On these facts, plaintiff's argument for equitable tolling is foreclosed. Accordingly, plaintiff's first cause of action is DISMISSED without leave to amend.

### B.     Second Cause of Action

Plaintiff's second cause of action alleges that defendants sexually harassed plaintiff by creating a hostile work environment in violation of Title VII. Compl. ¶ 64. Plaintiff alleges that defendants' sexist language, demeaning comments, and physical contact created a hostile work environment. *Id.* Similar to plaintiff's first cause of action, defendant argues that no act contributing to the alleged hostile work environment occurred between February 17, 2015 and April 3, 2015 and thus plaintiff's second cause of action is time barred. Plaintiff responds that her February 20, 2015 conversation with Welsh immediately prior to her resignation is a component part of her sexual harassment claim and therefore renders the cause of action timely.

To state a sexual harassment hostile workplace claim, a plaintiff must show: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117. Even if most acts contributing to the hostile work environment occur outside the filing period, a hostile work environment claim is not time barred as long as an act contributing to the hostile work environment occurred within the filing period. *Id*. To determine whether a discrete act is part of a larger "unlawful employment practice," a court considers whether the act is "sufficiently severe or pervasive and whether the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers." *Porter v. California Dept. of Corrections*, 419 F.3d 885, 893 (9th Cir. 2005) (quoting

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)) (internal quotations omitted).

### 1. Severe and Pervasive Harassment

Plaintiff now argues that her February 20, 2015 conversation with Welsh is a component part of her sexual harassment claim. In other words, plaintiff claims that the conversation involved conduct that contributed to a hostile work environment. Plaintiff alleges the hostile work environment resulted from "unwelcome slurs, denigrating comments, and physical contact." However, plaintiff's complaint only states that "[o]n February 20, 2015, PLAINTIFF again learned that she still did not have furniture and contacted Welsh. Welsh continued to assert that all of her concerns had been properly addressed." Compl. ¶¶ 40, 65.

Plaintiff has not pled facts plausibly linking the February 20, 2015 conversation to her hostile work environment claim. Alfred and Kelly — not Welsh — were the alleged sources of these slurs, comments, and contact. As to Welsh, plaintiff only pleads that she contacted him on February 20 and that Welsh told plaintiff that her concerns had been addressed. Plaintiff does not allege that Welsh himself made inappropriate advances, demeaning comments, or unwanted physical contact. Thus the complaint requires further pleading to demonstrate, if plaintiff can, that Welsh's statements were part of or involved in the larger "unlawful employment practice" she has alleged.

In her opposition, plaintiff contends that Welsh "continued to force" her to confront Alfred, apparently referring to the fact that plaintiff had to continue to "come into the office where Alfred worked to turn in [her] time sheets." Opp'n (Dkt. 20) at 13. Yet plaintiff's complaint only states that plaintiff was forced to submit time sheets at the office where Alfred worked. Compl. ¶ 35. It does not allege that Welsh himself forced her to submit the time sheets or to interact with Alfred. *See id*. Similarly, plaintiff's opposition asserts that Welsh forced plaintiff "to confront her harasser and made it clear that her hostile work environment would not change" by "giving [Alfred] a key to [plaintiff's] office, and not furnishing her new office." Opp'n (Dkt. 20) at 13. Plaintiff's complaint does not allege these facts. Plaintiff's complaint states only that Maltez told

plaintiff Alfred had a key to her new office. Compl. ¶ 38. As pled, plaintiff has not established that the February 20, 2015 conversation with Welsh is a component part of her sexual harassment claims. *See Guevara v. Marriott Hotel Servs., Inc.*, No. 10-5347, 2012 WL 4097721, at *7 (N.D. Cal. Sept. 17, 2012) ("In sum, because the SAC does not allege facts demonstrating that a discriminatory act contributing to a hostile work environment claim occurred within the filing period . . . Plaintiff has failed to state an actionable hostile work environment claim."). If plaintiff can plead additional facts plausibly suggesting that her February 20, 2015 conversation with Welsh was part of a larger "unlawful employment practice," her hostile work environment claim may be timely.

### 2.     Constructive Discharge

Finally, plaintiff argues that her February 20, 2015 constructive discharge is somehow a component part of her hostile work environment claim.[2] Opp'n (Dkt. 20) at 14. This argument improperly conflates the date from which a constructive discharge claim accrues with the acts that make up that claim. Although the clock for plaintiff's constructive discharge claim began running on February 20, 2015, the date of her resignation, it does not necessarily follow that any act contributing to her constructive discharge can be a basis for her hostile work environment claim. In *Green*, the Supreme Court made clear that each act that makes up a constructive discharge claim need not itself be discriminatory. *Green*, 136 S. Ct. at 1778 (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115-121 (2002)) ("So long as those acts are part of the same, single claim under consideration, they are part of the 'matter alleged to be discriminatory,' whatever the role of discrimination in each individual claim."); *cf. id.* at 1788 (Alito, J.,

---

[2] Plaintiff brings a separate cause of action for constructive discharge. *See* Compl. ¶ 72. To state a constructive discharge claim, a plaintiff must show that, looking at the totality of the circumstances, a reasonable person "would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir. 1984). A claim for constructive discharge arises when an employee tenders his or her resignation. *Green*, 136 S. Ct. at 1782. In other words, once a federal employee resigns, she has 45 days to contact an EEOC counselor. Here, plaintiff resigned on February 20, 2015 and initiated EEOC counseling 43 days later on April 3, 2015. Defendant has not moved to dismiss plaintiff's separate Title VII constructive discharge cause of action because it is timely.

10

concurring) ("It is abundantly clear that the majority has abandoned the discriminatory-intent requirement and would deem a constructive discharge claim timely even if no discriminatory act occurred within the limitations period."). While the act of resignation triggers the EEO limitations period for a constructive discharge claim, plaintiff may not hitch a separate claim for hostile work environment to her resignation date. Instead, plaintiff must show that an act contributing to her hostile work environment claim occurred on or after February 17, 2015. Because she fails to do so, plaintiff's second cause of action is DISMISSED with leave to amend.

### C. Fourth Cause of Action

Plaintiff's fourth cause of action is for retaliation under Title VII. Plaintiff alleges that defendant created a hostile work environment and took "other adverse actions" in order to retaliate against her for complaining about harassment. Compl. ¶ 81. As above, defendant argues that the "other adverse actions" each consisted of discrete acts that occurred before February 17, 2015. As a result, any claim based on those acts is time barred. Defendant further argues that plaintiff's February 20, 2015 conversation with Welsh was not an adverse employment action.

A prima facie case of retaliation requires a plaintiff to show (1) she engaged in a protected activity, (2) her employer subjected her to adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Steiner v. Showboat Opportunity Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994). An "adverse action" is any employment action that is "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). Actions that create a hostile work environment may constitute adverse actions. *See id.* at 1245-46.

As set forth above, the bulk of the retaliatory acts alleged occurred more than 45 days prior to plaintiff's first contact with an EEO counselor on April 3, 2015. The only timely discrete act plaintiff alleges is her February 20, 2015 conversation with Welsh. Plaintiff's current complaint fails to allege how, if at all, that conversation amounted to an adverse employment action occurring within the statutory time frame. Plaintiff's fourth cause of action is accordingly DISMISSED, but with leave to amend.

### D. Fifth Cause of Action

Plaintiff's fifth cause of action alleges that defendants harassed plaintiff by creating a hostile work environment in violation of the Rehabilitation Act. Plaintiff alleges that defendants created a hostile, offensive, or intimidating work environment by subjecting her to denigrating slurs based on her disability and by denying her leave. Compl. ¶ 81. Defendant again contends that the February 20, 2015 conversation between plaintiff and Welsh did not contribute to the allegedly hostile environment and thus plaintiff's fifth cause of action is time barred.

Plaintiff's fifth cause of action is premised on "unwelcome slurs and denigrating comments" concerning plaintiff's disabilities and "a denial of leave." Compl. ¶ 91. For reasons discussed earlier in this order, the complaint does not adequately allege facts suggesting that plaintiff's conversation with Welsh on February 20, the only timely discrete event alleged on the face of the complaint, involved plaintiff's disabilities in any way. In fact, plaintiff's complaint alleges no facts, timely or untimely, that she faced any disability-based discrimination during her employment. She alleges only that in November 2014, Alfred told her that "if she knew that both she and her daughter suffered from chronic asthma, she should have never accepted the job." Compl. ¶ 28. Accordingly, plaintiff's fifth cause of action is hereby DISMISSED with leave to amend.

## II. Failure to State a Claim

Defendant contends that plaintiff failed to plead facts sufficient to support her sixth cause of action for constructive discharge under the Rehabilitation Act. Plaintiff's sixth cause of action alleges that defendant constructively discharged plaintiff by harassing her on the basis of her disability until her working conditions became intolerable. Defendant argues that plaintiff failed to plead facts for a disability-based constructive discharge claim.

A constructive discharge occurs when "a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Satterwhite*, 744 F.2d at 1381. Generally, "a 'single isolated instance' of employment discrimination is insufficient as a matter of law to support a finding of constructive

discharge." *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (citing *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1984)). Further, "[w]here a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge . . . ." *Brooks*, 229 F.3d at 930.

Plaintiff has failed to plead facts plausibly suggesting she might have been "driven from the workplace" on the basis of disability discrimination. *Brooks*, 229 F.3d at 930. Plaintiff points to only a single occasion where Alfred commented on her asthma. *See* Compl. ¶ 28. As a matter of law, pleading only a single conversation on a single day is insufficient to state a claim for disability-based constructive discharge. *Watson*, 823 F.2d at 361. Accordingly, plaintiff's sixth cause of action is DISMISSED with leave to amend.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss plaintiff's first, second, fourth, fifth, and sixth causes of action, with leave to amend as to the second, fourth, fifth and sixth causes of action. **If plaintiff wishes to amend her complaint in accordance with this order, plaintiff must file an amended complaint no later than April 7, 2017**.

This order resolves Dkt. 15.

**IT IS SO ORDERED**.

Dated: March 21, 2017

_____
SUSAN ILLSTON
United States District Judge